IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-524-BO-KS

| | | |
|---|---|---|
| VANESSA AGUILAR AYALA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WAKE COUNTY, NORTH CAROLINA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have responded, defendants have replied, and a hearing on the matter was held before the undersigned on May 8, 2025, at Raleigh, North Carolina. In this posture, the motion is ripe for disposition. For the reasons that follow, the motion is denied.

## BACKGROUND

Plaintiffs have filed this putative class action seeking compensatory and punitive damages for the alleged failure to train and supervise James Otis Perry (Perry), a certified nurse assistant (CNA) employed by defendant Wake County in its prenatal clinics, following Perry's surreptitious recording of countless women without their permission during their medical appointments. According to the allegations in plaintiffs' complaint, Perry was employed by defendant Wake County from November 2011 until his termination in September 2021. Perry worked in two prenatal clinics, one on East Millbrook Road and one on Sunnybrook Road, both in Raleigh, North Carolina. Perry would film unsuspecting patients and others while they were naked or otherwise

exposed in the bathroom or during medical examinations. Perry's actions were discovered by a Wake County employee in September 2021, who reported it to Wake County. Perry was arrested and pleaded guilty to multiple felony charges. [DE 1] Compl. ¶¶ 1-6.

Plaintiffs have filed this action against Perry's employer, Wake County, as well as his nursing supervisors Valerie Mitchell, Cindy Evans, and Cindy Wolfe (collectively the supervisor defendants). Plaintiffs allege claims under 42 U.S.C. § 1983 against the supervisor defendants for failure to supervise Perry and against Wake County for failure to train and supervise Perry and for failure to supervise the supervisor defendants. Plaintiffs further bring state law claims against the supervisor defendants for negligence and gross negligence as well as negligent infliction of emotional distress. Spousal class representative plaintiffs also bring a claim for loss of consortium against all defendants.

Defendants have moved to dismiss plaintiffs' complaint on several grounds. First, defendants argue that plaintiffs' claims are barred by the rule against claim-splitting. Next, defendants contend that the prior pending action doctrine bars plaintiffs' complaint. Defendants further argue that plaintiffs' § 1983 claim against the supervisor defendants for failure to supervise fails to state a claim because plaintiffs have not alleged an underlying constitutional violation and the supervisor defendants lacked sufficient knowledge. Defendants seek dismissal of plaintiffs' *Monell* claims in Counts IV and V, dismissal of the loss of consortium claim because the complaint is barred by the claim-splitting and prior pending action doctrines, and finally dismissal of plaintiffs' punitive damages claim. In reply, defendants also contend that this Court should abstain under *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## A. Claim-splitting, prior pending action, and *Colorado River*

Defendants' arguments relating to claim-splitting, prior pending action as well as *Colorado River* abstention are based on the existence of a lawsuit brought by these same plaintiffs in Wake County Superior Court, *Ayala, et al. v. Perry, et al.*, No. 23-CVS-001154. In their Wake County Superior Court complaint, which was filed on January 26, 2023, plaintiffs brought putative class claims against Perry and Wake County. *See* [DE 27-2]. The claims arise out of the same facts and circumstances as support the claims in this case, Perry's surreptitious recording of plaintiffs and others in various states of undress during their visits to the East Millbrook and Sunnybrook Road County prenatal clinics. *Id.*

On September 1, 2023, the Superior Court dismissed Wake County from plaintiffs' state court suit. [DE 30-1]. On March 19, 2025, the North Carolina Court of Appeals dismissed

3

plaintiffs' appeal of the dismissal of Wake County as a party to their state court suit as interlocutory. *Ayala v. Perry*, 913 S.E.2d 271 (N.C. Ct. App. 2025). Accordingly, at this time, plaintiffs have no claims pending against Wake County or any of the supervisor defendants in their Wake County action.

"The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (internal quotation marks and citation omitted). When faced with a duplicative suit, "simple dismissal of the second suit is [a] common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) ("Often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit."). Accordingly, courts routinely apply claim-splitting to prevent duplicative suits in *federal* court. *See, e.g., O'Dell v. CMH Homes, Inc.*, No. 1:15CV63, 2015 WL 4041302, at *4 (N.D.W. Va. July 1, 2015) ("claim splitting is not an applicable theory when the 'contemporaneous exercise of concurrent jurisdiction' is between a state court and a federal court."). On the other hand, "[i]n general, the pendency of an action in state court is no bar to proceedings in federal court concerning the same matter." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006). Accordingly, the Court determines that the rule against claim-splitting is inapplicable here and does not bar plaintiffs' claims.

Nor will the Court apply the prior pending action doctrine to bar plaintiffs' claims. Defendants rely on North Carolina cases which have held that "where a prior action is pending

4

between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action." *Eways v. Governor's Island*, 326 N.C. 552, 558 (1990). "This doctrine, which implicates essentially the same questions as the outmoded plea of abatement, is rooted in the principle of judicial economy and the basic rationale that when a court can dispose of the entire controversy in the prior action, the subsequent action is wholly unnecessary." *Valentine v. Town of Chapel Hill*, No. 1:22-CV-102, 2024 WL 1349320, at *4 (M.D.N.C. Mar. 29, 2024) (internal quotations, citations, and alterations omitted). "The ordinary test for determining whether or not the parties and causes are the same for the purpose of abatement by reason of the pendency of the prior action is this: Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?" *Cameron v. Cameron*, 235 N.C. 82, 85 (1952).

Here, while the plaintiffs and Wake County are or were parties to both actions, Perry is named only in the Superior Court action and the supervisor defendants are named only in this action. Federal claims have been alleged in this case, but not in the Superior Court action. Moreover, the state law claims filed in this case differ from those alleged in the Superior Court action. While the claims are based on the same or similar factual allegations, and there is overlap between the parties, because the claims are different and the Superior Court case will not decide any issues as they relate to § 1983 claims or the supervisor defendants, dismissal under the prior pending action doctrine is not necessary. *See Jessee v. Jessee*, 212 N.C. App. 426, 438 (2011) (where claims brought in second action not "completely subsumed in or [] completely resolved by" first action, prior pending action doctrine does not apply).

Finally, abstention under *Colorado River* is not appropriate.

In *Colorado River,* the Supreme Court held that a federal court may abstain from deciding non-frivolous, nondeclaratory claims in favor of a parallel state suit for

5

reasons of "wise judicial administration"—but only in "exceptional" circumstances. 424 U.S. at 818, 96 S.Ct. 1236. The Court explained that a federal court's "virtually unflagging obligation" to decide such federal claims rendered its authority to stay a federal action for these administrative reasons "considerably more limited than the circumstances appropriate for abstention" under other abstention standards.

*VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015). There is no dispute that this Court has jurisdiction over plaintiffs' claims, and defendants have made no persuasive argument that any exceptional circumstances exist which would support abstention. [1]

B. Section 1983 and *Monell* claims

Defendants next argue that plaintiffs have failed to plausibly allege their § 1983 claims against the supervisor defendants and Wake County. The Court disagrees.

Plaintiffs have adequately pleaded their § 1983 failure to supervise claim against the supervisor defendants.[2] To establish supervisory liability against the supervisor defendants for the failure to train Perry, plaintiffs must ultimately be able to show that "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "[A] personal capacity supervisory

[1] As the Court will not dismiss plaintiffs' complaint based on the claim-splitting rule or the prior pending action doctrine, defendants' arguments in support of dismissal of plaintiffs' loss of consortium claim fail.

[2] The supervisor defendants are named in their individual capacities, Compl. ¶¶ 19-21, and thus this claim appears to concern personal capacity supervisory liability, rather than municipal liability. *See, e.g., Doe v. Anne Arundel Cnty.*, No. 1:23-CV-03451-JRR, 2025 WL 675059, at *11 (D. Md. Mar. 3, 2025).

6

liability claim turns on whether an individual supervising defendant knew about, was deliberately indifferent to, and—through his or her inaction—caused the constitutional injury alleged." *Shipley v. Disney*, No. CV SAG-21-3173, 2022 WL 2789076, at *8 (D. Md. July 15, 2022).

Plaintiffs have alleged that the supervisor defendants had actual or constructive knowledge of Perry's conduct, that the supervisor defendants failed to train Perry on patient privacy or the right to not be recorded or photographed during medical visits, and that the failure by the supervising defendants to adequately train Perry constituted deliberate indifference to plaintiffs' rights as well as tacit approval of Perry's actions, which occurred over a period of at least five years. *See* Compl. ¶¶ 179-186. This is sufficient, at this stage, to nudge plaintiffs' claim across the line from conceivable to plausible. *See Roe v. Tucker*, No. 3:22CV749 (RCY), 2023 WL 4353699, at *4 (E.D. Va. July 5, 2023) (noting "low bar required to survive" 12(b)(6) motion and finding allegations which plausibly put supervisor on notice of actions of subordinate which could violate plaintiff's constitutional rights sufficient to state supervisor liability claim).

Defendants contend that plaintiffs have failed to allege a constitutional right which was violated by Perry. "The constitutional right to privacy extends to two types of interests: 'one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) (citation omitted). And "[t]he more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Id.*

Defendants' arguments that plaintiffs cannot proceed under a theory that their constitutional right to privacy was violated by defendants' conduct are unpersuasive. True, "marriage, contraception, family relationships, and child rearing and education" are areas in which a right to privacy has been traditionally observed. *DM v. Louisa Cnty. Dep't of Hum. Servs.*, 194

7

F. Supp. 3d 504, 508 (W.D. Va. 2016). But even "prisoners retain an interest in some degree of bodily privacy and integrity" while incarcerated. *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016). Photographing and filming plaintiffs' bodies while they used the bathroom and received obstetric and gynecological examinations plausibly forced them to disclose highly personal and sensitive of information, which they reasonably expected would not be subject to public scrutiny. The Court will not dismiss plaintiff's failure to train claim against the supervising defendants.

Similarly, plaintiffs have plausibly alleged their claim for failure to train and supervise Perry against Wake County. As noted above, plaintiffs' bar at this stage of the proceedings is low. Plaintiffs have alleged that Wake County had actual or constructive knowledge of Perry's actions, that those actions took place over a period of years, and that the failure to provide Perry with training regarding patient privacy amounted to tacit authorization or deliberate indifference. "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402–03 (4th Cir. 2014) (noting further that alleging a *Monell* claim is far easier than proving one). Plaintiffs' allegations are sufficient at this early stage, and the Court will permit plaintiffs' § 1983 claim against Wake County for failure to train Perry to proceed. For the same reasons, the Court will permit plaintiffs' § 1983 claim against Wake County for failure to train the supervisor defendants to proceed as well.

C. Punitive damages

Finally, the Court will not dismiss plaintiffs' request for punitive damages. "A punitive damages claim is not technically an independent cause of action, but is instead dependent upon an award of compensatory damages on one of a plaintiff's other claims." *Taylor v. Bettis*, 976 F. Supp. 2d 721, 747 (E.D.N.C. 2013). Whether punitive damages are available will depend first on

whether compensatory damages may be awarded. The Court will not dismiss the request for punitive damages at this stage.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 26] is DENIED.

SO ORDERED, this **27** day of May 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE